## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **FRANK ADAMS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-cv-3384 (TSC) |
| | ) | |
| **MERRICK GARLAND**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION

*Pro se* Plaintiff Frank Adams applied for a job with the Federal Bureau of Investigation ("FBI") in 2012 and again in 2014. Ultimately, the FBI deemed him unsuitable for employment. Six years later, he filed this lawsuit against Merrick Garland in his official capacity as Attorney General of the United States, alleging that the FBI refused to hire him because of his race, age, and disability, and retaliated against him for engaging in statutorily protected activity. In its motion to dismiss or for summary judgment, Defendant correctly argues that Plaintiff failed to timely exhaust his administrative remedies. Consequently, the court will GRANT Defendant's motion.

### I.      BACKGROUND

Plaintiff is "an African American male, over the age of 40 with a disability." [1]  Compl., ECF No. 1 ¶ 49. In January 2012, he completed an online screening questionnaire for employment with the FBI. *Id.* ¶ 8. He claims "the FBI apparently programmed an algorithm or

---

[1] In his Complaint, Plaintiff does not disclose his disability or allege that the FBI knew he is disabled. However, in his opposition to summary judgment, Plaintiff asserts that he has "greater than 50% disability rating from the Veteran's Administration." *See* Pl. Mem. in Opp'n, ECF No. 23 at 11.

other instructions into its online computer system that did not allow [him] to apply for a position for which he was overly qualified." *Id.* Plaintiff complained about the FBI's screening process "to his congressman whose inquiries led to the FBI eventually allowing Plaintiff to apply for employment using the same online system." *Id.* ¶ 9.

Plaintiff subsequently applied and interviewed for a "GS-9, Step 1, Investigative Specialist position." *Id.* ¶ 10. In June 2012, he received an offer contingent upon the successful completion of a background investigation. *Id.*

In December 2012, FBI employee Lynnette James sent Plaintiff an email thanking him for his continued interest in working for the FBI but indicating that "additional information [wa]s needed" to complete his background investigation. *Id.* ¶¶ 29–30. James asked Plaintiff to complete a "Medical Follow Up as soon as possible," *id.*, because "more clinical information" was needed to make a "final determination." Compl., Ex. B at 18–19. She specifically instructed him to (1) complete an eye evaluation with a board certified ophthalmologist or optometrist, (2) "[s]ubmit CBC" blood test results, and (3) "repeat your chest X-ray and submit the clinical findings." *Id* at 18. Plaintiff pushed back on each of the requests, arguing that he had already submitted the requested information. *Id.* at 19. James responded that: (1) Plaintiff's previous eye-exam results showed him to have 20/25 vision, which was insufficient for passing the exam absent proof of a prescription for corrective lenses; (2) he could disregard her request to "submit a CBC" because in fact he had already done so; and (3) Plaintiff's initial X-ray results revealed an "abnormality (shadow)" that required additional examination. *Id.* at 20. Plaintiff alleges that James' requests were "retaliatory and discriminatory conduct intended to cause him undue expense and inconvenience and to frustrate him into withdrawing" his application. Compl. ¶ 47.

The following summer, on June 20, 2013, an employee in the FBI's Staffing and Position Management Unit sent Plaintiff a letter stating that his background investigation was "completed successfully," but "due to budgetary reductions initiated as a result of sequestration," the FBI was "unable to bring [Plaintiff] onboard" at that time. *Id.* ¶ 11; Compl., Ex. A at 15. The letter also stated that "[i]f the budgetary issues are resolved . . . the FBI may be able to bring [Plaintiff] on board," so long as his background check is still valid, and a "successfully adjudicated background investigation is valid for two years." Ex. A at 15.

In January 2014, the FBI sent Plaintiff another letter stating that "due to the recent budget passing, we are anticipating hiring for this program during Fiscal year 2014," to which Plaintiff responded that he was "still interested." Compl. ¶ 13. The next month, Stepney Hopkins, an FBI Human Resources (HR) specialist, told Plaintiff that he would have to re-complete the entire employment application process, which he ultimately did. *See id.* ¶¶ 14–20, 24.

On July 10, 2014, the FBI sent Plaintiff a letter finding him unsuitable for FBI employment because of his (1) "[f]ailure to provide requested information," (2) "[n]egative employment history," and (3) "[n]egative interaction" with Hopkins at the FBI's Baltimore Field Office when she conducted his Personnel Security Interview. *Id.* ¶ 24; Def. Ex. A, ECF No. 16-3. Plaintiff alleges that each of these reasons was pretext for discrimination. Compl. ¶ 24.

On August 7, 2014, Plaintiff appealed the FBI's decision finding him unsuitable for employment to the FBI's Suitability Appeals Board. While awaiting a response, Plaintiff contacted an Equal Employment Opportunity ("EEO") Counselor on December 8, 2015—seventeen months after the FBI sent its July 2014 unsuitability letter. *See* Def. Ex. B, ECF No. 16-4 at 3. The FBI Appeals Board denied his appeal on December 30, 2015, *see* Compl. ¶¶ 25–26, and in January 2016, he filed a Complaint with the Equal Employment Opportunity

Commission ("EEOC") alleging that the FBI's 2014 adverse hiring decision was discriminatory on the basis of race, age, disability, and constituted reprisal for prior EEO activity, *see* Def. Ex. B at 2–3.  In March 2016, the Assistant Director of the EEO Office issued a decision that the Office would investigate his claim that he was subject to reprisal on the basis of race and disability when his appeal to the FBI Appeals Board was denied.  *See id*. at 2.  However, the Office notified him that it would not investigate his other claims, including his challenge to the FBI's 2014 decision that he was unsuitable for employment, because he did not contact an EEO Counselor within forty-five days of the alleged discrimination, as required by 29 C.F.R. § 1614.105(a)(1), § 1614.107(a)(2).  *See id*. at 3.

Plaintiff claims that on April 2, 2020 he "discovered" a document, inadvertently "submitted" by an FBI employee, that "revealed" that his 2012 employment application "had actually been approved on October 3, 2012," and therefore he should not have been denied employment due to sequestration in June 2013. Compl. ¶¶ 12, 27–28.[2]  With this new revelation in hand, Plaintiff filed a Complaint with the FBI's EEO Office on May 23, 2020, which was denied on August 26, 2020.  *Id*. ¶ 7.

On November 19, 2020, Plaintiff filed this lawsuit alleging that the FBI discriminated against him based on his race, age, and disability, and retaliated against him for engaging in statutorily protected activities, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Americans with Disabilities Act of 1990 ("ADA").  He claims he was "denied twice for the same employment

---

[2] Plaintiff did not attach this document to his Complaint or his opposition brief.  He also provided no information about its content, who submitted it, why it was submitted, when it was submitted, or to whom it was submitted.

position due to hostile discrimination that consisted of systematic non-discrete, continuing

violations that occurred in the FBI employment and appeals processes." *Id*. ¶ 54.

Defendant has moved to dismiss, or in the alternative, for summary judgment.  It argues

that the sequestration related decision in 2013 is not a "materially adverse employment action"

and therefore Plaintiff can only pursue a refusal to hire claim based on the FBI's 2014 denial in

which he was deemed unsuitable for employment, and he did not timely exhaust his

administrative remedies for that claim.  *See* Def. Mem., ECF No. 16-2 at 2, 7–10.  In response,

Plaintiff reiterates his claim that the FBI's 2013 decision not to hire him because of sequestration

was a materially adverse employment action, and his failure to contact an EEO officer within

forty-five days should be excused because he did not discover Defendant's discriminatory

actions until April 2020.[3]  *See* Pl. Mem. in Opp'n at 14–15, ECF No. 23.

## II.    LEGAL STANDARD

### A.  <u>Motion to Dismiss Standard</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the

legal sufficiency of a complaint.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible

when the factual content allows the court to "draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*  A plaintiff's factual allegations do not need to be

---

[3] After Defendant filed its motion to dismiss or for summary judgment, the court issued a *Fox-Neal* Order informing Plaintiff of his obligations under the Federal Rules of Civil Procedure and the Local Rules.  *See* Order, 09/23/2021, ECF No. 18. The court provided detailed instructions for how Plaintiff should comply with Federal Rule of Civil Procedure 56 and Local Rule 7(b), (h).

"detailed," but "the Federal Rules demand more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (citing *Iqbal*, 556 U.S. at 662)).

**B.  <u>Motion for Summary Judgment Standard</u>**

Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323, (internal quotations marks omitted).  The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotation marks omitted).

*Pro se* plaintiff filings are held to "less stringent standards" than legal documents drafted by an attorney.  *Gage v. Somerset Cnty.*, 369 F. Supp. 3d 252, 258 (D.D.C. 2019) (citation omitted).

### III.    ANALYSIS

**A.  <u>ADA Refusal to Hire Claim</u>**

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "To demonstrate discrimination in violation of the ADA . . . the plaintiff 'must prove that he had a disability within the meaning of the ADA, that he was "qualified" for the position with or without a reasonable accommodation, and that he suffered an adverse employment action because of his disability.'"  *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015) (quoting *Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001)).

Plaintiff has not pleaded any facts regarding what his disability is or alleging that the FBI was aware of his disability when it decided not to hire him in 2013 or 2014.  Consequently, he cannot show that he has a protected disability or that the FBI refused to hire him because of it, and his ADA claim must be dismissed for failing to state a claim.[4]  *See Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 55 (D.D.C. 2015) (dismissing ADA claim where Plaintiff failed to plead facts plausibly alleging a disability covered by the ADA).

---

[4] The absence of a disability would not foreclose a "perceived as" claim.  But even if Plaintiff had stated a prima facie disability discrimination claim, it would be untimely because he did not consult an EEO officer within forty-five days of the FBI's 2013 or 2014 decisions.  *See infra* Section III.B.

**B.**  **Failure to Timely Exhaust Administrative Remedies on Title VII and ADEA  Claims**

Title VII and the ADEA require an aggrieved party to exhaust their administrative remedies before filing suit.  *See* 42 U.S.C. § 2000e–16(c) (Title VII); 29 U.S.C § 633a(b)–(d) (ADEA).  Before suing under these statutes, an applicant for federal employment must consult an EEO counselor within forty-five days of the alleged discriminatory acts.  *See* 29 C.F.R. § 1614.105(a)(1); *In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006).  But "administrative time limits . . . are subject to equitable tolling, estoppel, and waiver.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  And "[b]ecause untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it.  If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense."  *Id*. (citations omitted).

For purposes of this motion, the court will assume that Plaintiff is correct that the FBI's decision not to hire him because of sequestration was a materially adverse employment action, and—as Defendant agrees—that the FBI's 2014 unsuitability decision was also an adverse employment action.  Under this scenario, Plaintiff has failed to timely exhaust his administrative remedies.

Plaintiff argues that the FBI's 2013 and 2014 decisions were "non-discreet [sic], hostile, continuing violations" of his rights that extended through 2015, when he contacted an EEO officer.  Pl. Mem. in Opp'n at 6–7 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)); *see* Compl. ¶¶ 54–55 (citing *Palmer v. Kelly*, 17 F.3d 1490 (D.C. Cir. 1994); *Moore v. Chertoff*, 424 F. Supp. 2d 145, 150 (D.D.C. 2006) (citations corrected)).  But the Supreme Court has explained that employment actions such as a "refusal to hire" and "each retaliatory adverse employment decision" are "discrete acts" that "occur" at a fixed time, regardless of any relationship that may exist between those acts.  *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114.

Plaintiff alleges that he suffered a discriminatory adverse employment action on June 20, 2013, when the FBI notified him that although his background investigation was successfully completed, he would not be hired due to sequestration.  He was subject to an additional adverse employment action over a year later, on July 10, 2014, when the FBI notified him that he would not be hired because he was unsuitable.  Compl. ¶ 24.  Under the Supreme Court's holding in *Nat'l R.R. Passenger Corp.*, Plaintiff had forty-five days from receipt of the 2013 letter to contact an EEO officer regarding that discrete refusal to hire, and he had forty-five days from his receipt of the 2014 letter to do the same.  *See* 29 C.F.R. § 1614.105(a)(1).

Plaintiff argues in the alternative that the court should apply the "discovery rule" to determine when his 2013 claim accrued.  He argues that under that rule, he did not "discover" that the FBI's 2013 sequestration letter was discriminatory until April 2020 when he learned that the agency had favorably adjudicated his application in October 2012.  Compl. ¶¶ 2–3, 27–28; Pl. Mem. in Opp'n at 10, 14.  He further argues that Defendant actively concealed the October 2012 favorable adjudication.  *See* Compl. ¶¶ 2, 4, 27; Pl. Mem. in Opp'n at 10–11, 14–15.  He contends that because he discovered the alleged discrimination in April 2020, his contacting an EEO Officer on May 23, 2020, less than forty-five days later, was timely.

In discrimination cases, courts in this Circuit have found that "the statutory clock in a discrimination case begins to run when a plaintiff knows or should have known of the defendant's discriminatory action." *Faison v. District of Columbia*, 664 F. Supp. 2d 59, 66 (D.D.C. 2009) (citation omitted); *see, e.g.*, *Wiggins v. Powell*, No. CIV 02-1774 (CKK), 2005 WL 555417, at *16 (D.D.C. Mar. 7, 2005) (applying the discovery rule and dismissing age and gender based discrimination claim where it was evident from "[p]laintiff's own writings" that he was "both aware of an alleged pattern of age and gender-based discrimination against him" at an

earlier time).  But Plaintiff has proffered no evidence to support his claim that he discovered the October 2012 favorable adjudication in April 2020.  Despite his claim that he discovered the favorable adjudication "through a document a FBI employee submitted," Compl. ¶ 28; *see* Pl. Mem. in Opp'n at 2–3, he did not submit that document or any information about it, and it is not part of the record before the court.

Likewise, because Plaintiff has not come forward with any evidence of concealment of the letter, much less its existence, equitable tolling is not appropriate.  *See Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010) ("An employee is entitled to equitable tolling if he demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'")); *Dyson v. District of Columbia*, 710 F.3d 415, 422 (D.C. Cir. 2013) ("Equitable tolling is meant to ensure that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit." (cleaned up)).

Finally, equitable estoppel "prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time."  *Chertoff*, 424 F. Supp. 2d at 150 (emphasis deleted).  To invoke this doctrine, Plaintiff must show that Defendant engaged in some form of "affirmative misconduct" that prevented him from timely filing.  *Id*. Again, Plaintiff has not proffered facts to show Defendants engaged in misconduct.

Viewing the evidence in the light most favorable to Plaintiff, the court finds that he has failed to proffer evidence establishing a genuine dispute to whether  he timely exhausted his administrative remedies for his Title VII and ADEA claims.  Consequently, these claims are properly dismissed pursuant to Federal Rule of Civil Procedure 56.

## IV.    CONCLUSION

For reasons explained above, the court will GRANT Defendant's Motion to Dismiss or for Summary Judgment: ECF No. 16.

Date:  March 31, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge